IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMIE SMITH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 13-cv-900-MJR-SCW ) |
| RICK HARRINGTON, et al., | ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### I. Introduction

This case is before the Court on several motions for preliminary injunctions and protective orders filed by Plaintiff (Docs. 8, 11, 16, 31, and 38). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **DENY** Plaintiff's emergency motions (Docs. 8, 11, 16, 31, and 38).

### II. Findings of Fact

On August 29, 2013, Plaintiff in this case filed a motion for preliminary injunction seeking to be moved from Menard Correctional Center to another correctional facility in order to protect him from the imminent danger he believed was posed by inmates knowing his status as an informant for prison guards (Doc. 1). District Judge Michael J. Reagan initially denied Plaintiff's motion because Plaintiff had failed to file a Complaint in this case (Doc. 4). Judge Reagan granted Plaintiff leave to file an official Complaint in this case. Plaintiff then filed two additional emergency motions to transfer arguing that Plaintiff had been attacked by two inmates while on the yard due to

his status as an informant (Docs. 8 and 11). Plaintiff again sought a transfer to another institution, but the Court deferred ruling on either motion until Plaintiff filed his Complaint with the Court (Docs. 10 & 12).

On October 7, 2013, Plaintiff filed his Complaint (Doc. 14). Plaintiff's Complaint alleges that on March 10, 2013, Plaintiff sought protective custody, claiming that internal affairs was putting his life in danger by forcing his to act as their informant (*Id.*). While Plaintiff was initially moved to the protective custody intake area, he was eventually denied protective custody and moved back to general population (*Id.*). Then on September 27, 2013, while on the yard, Plaintiff was attacked by two inmates. After the attack he tried to sign in to protective custody but was denied. Plaintiff also claims that he was denied medical attention for his injuries (*Id.*).

In response to Plaintiff's Complaint and the pending emergency motions, Judge Reagan assigned this case to the undersigned for a hearing on Plaintiff's pending motions for preliminary injunction (Doc. 18). Since Plaintiff's initial filings, Plaintiff has filed a total of five emergency motions for preliminary injunction (Docs. 8, 11, 16, 31, and 38). Plaintiff alleges that he is in imminent danger after being found to be a stool pigeon by inmates and attacked by two inmates on the yard. Plaintiff also alleges that internal affairs has sought to cover-up Plaintiff's problems, have harassed him for filing this Complaint, and continue to put his life in imminent danger.

Due to the directive from Judge Reagan and the various pending motions for preliminary injunction filed by Plaintiff, this Court held an evidentiary hearing on Plaintiff's motions on November 26, 2013. At the hearing, Plaintiff testified that on March 22, 2013, he filed a request to be placed in protective custody (Defendant's Exhibit A-3). Plaintiff's request indicated that internal affairs were his enemies and that they were putting his life in danger by using him to snitch on other inmates and that he did not want to be hurt by other inmates (*Id.*). As a result of his request, he was

placed in protective custody intake while his request was considered. Plaintiff was interviewed by internal affairs on March 27, 2013 and Officer Hecht's report indicated that Plaintiff was unable to substantiate his safety concerns or provide specific details of events that caused him to fear for his safety (Defendant's Exhibit A-2). Internal Affairs recommended that his request for protective custody be denied. Plaintiff's request was ultimately denied on April 16, 2013 (*Id.*). The decision was upheld by the ARB. Plaintiff indicates that on April 17, 2013 he also informed case work supervisor Jeanette Cowan and Betsy Spears that he wanted to be placed in protective custody but he was denied that request.

On August 9, 2013, Plaintiff filed another request to be placed in protective custody (Defendant's Exhibit B-2). Plaintiff was interviewed by counselor Cowan and it was determined that the basis for his request was the same as the basis he gave in March. As a result of Plaintiff's request being the same request as previously, Plaintiff's request was denied under the same rationale (*Id.*). Subsequently on September 27, 2013, Plaintiff was on the basketball court in the west yard when he was assaulted by two inmates. Plaintiff does not know the names of the inmates or their gang affiliations. The incident was witnessed by Inmate Ross. While Plaintiff told internal affairs that Ross could identify the prisoners, internal affairs declined to have Ross pick out inmates in a line up. Plaintiff asked to be seen by medical and although the sergeant in his cellhouse told him a med-tech would be sent to his cell, Plaintiff indicates that a med-tech never showed. Plaintiff testified that he requested protective custody from the gallery officer and the sergeant in the cellhouse, but they told him he could not request protective custody placement again. He acknowledged that he never filled out a written request for protective custody after the assault.

Plaintiff also called inmate Samuel Ross as a witness. Ross was on the yard on September 22, 2013 and witnessed the assault on Plaintiff. He notified the CO of the attack and the

CO informed him that there would be an investigation. He testified that he believes he could pick out the inmates who caused the attack if allowed the opportunity to look at a lineup, although he stated he believes that one of the inmates has already been transferred to another prison facility.

Jeannette Cowan also testified at the evidentiary hearing. Cowan is a case work supervisor at Menard Correctional Center and is involved in protective custody placement. She testified that when inmates request protective custody, they are placed in an intake status in protective custody. Cowan then interviews the inmates and conducts a file review, and fills out a portion of a "vote" sheet regarding protective custody. Cowan indicated that an inmate can request protective custody in various ways, including writing an emergency grievance or even a "kite". On the protective custody request form, an inmate writes the reason for wanting to be placed in protective custody. When Cowan interviews him, the inmate can also provide additional information as to their reason for wanting protective custody.

Cowan stated that when she interviewed Plaintiff, he did not provide any further information than what he wrote on his request form (Defendant's A-3). Plaintiff informed Cowan that he was tired of internal affairs treating him as a stool pigeon but he did not give her any specific name of an inmate or gang that was threatening him, nor did he provide any specific threats to his safety. Cowan testified that the request then goes to internal affairs who also conducts an interview and makes a recommendation and then the request goes to Betsy Spiller and then the Warden for review. Plaintiff's request was denied because they could not substantiate Plaintiff's claims. Cowan testified that the second time Plaintiff requested protective custody he did not tell them any more about what he was seeking protective custody for. Cowan stated that if Plaintiff had provided new information or a new basis for wanting protective custody, then the review process would have started over. Cowan also stated that Plaintiff could put in a request for protective custody as early as the next

day and, if the request included a basis for wanting protective custody that was different from his requests in the past, then he would be placed in intake and the review process would start over. On cross, Cowan denied that she received a letter on April 17, 2013 from Plaintiff.

### III. Conclusions of Law

**A.      Preliminary Injunction Standard**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To win a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) (citing *Winter*, 555 U.S. at 20). The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, 612 F.3d at 546.

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2). *See also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases

**challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).**

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," since they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").

**B.     Analysis**

Here, the undersigned **RECOMMENDS** that Plaintiff's emergency motions for preliminary injunction be denied because Plaintiff has not demonstrated a likelihood of success on the merits. The record before the Court indicates that Plaintiff originally requested protective custody in March 2013 and, at that time, the basis for his request was that the guards were placing him in danger and were his enemies. That request was considered and denied by Menard and the ARB because they could not substantiate his claims and because he would not provide any further detail as to which *inmates* posed a threat to Plaintiff. His second request for protective custody was denied because he failed to add any new information on the threats posed to him in the request or the interview. The Court finds Cowan's testimony on this point to be credible and reliable.

However, after Plaintiff was assaulted on September 27, 2013, he never sought protective custody. Plaintiff testified that he could not seek protective custody because the guards in

his cellhouse refused to provide him with a protective custody request slip and thus he was thwarted in his request for protective custody. The Court, however, finds Plaintiff's testimony on this point not to be credible. Cowan testified that Plaintiff could seek protective custody through numerous methods, many of which did not require a protective custody request slip. Plaintiff could send a "kite" to Cowan or file an emergency grievance. A protective custody request slip was not needed. Further, according to Plaintiff's testimony, he only asked an unidentified officer once for a protective custody slip. There is no evidence that he sought help from another guard or further inquired of a protective custody slip on a subsequent occasion. Plaintiff also testified that the last time he asked a guard to place him in protective custody he ended up in segregation when the guard denied him protective custody and he subsequently refused housing placement and, thus, Plaintiff did not want to go through that process again and wanted to wait and see what the Court would decide.

It is clear to the undersigned, based on the evidence before it, that Plaintiff never requested protective custody after his assault in September. Nothing in the record suggests that he requested protective custody. Further, Plaintiff has made clear in his testimony that he wants the Court to hear his claims and that he did not want to go through the protective custody process again with the guards. He, however, has never allowed Menard Correctional Center to review a protective custody request on the assault. Cowan testified that if Plaintiff filed a new request with a different basis for protective custody, then the protective custody review process would start over again. Plaintiff would be transferred to protective custody intake and would be interviewed and his request would be considered. Plaintiff did not do this after the assault. He clearly has a new basis for a protective custody request and this request would start the protective custody review process all over again. Because Plaintiff has failed to seek protective custody after the September assault, the Court finds that Plaintiff is unlikely to succeed on the merits because he has never allowed Menard

Correctional Center an opportunity to review a protective custody request based on the assault. Thus, the undersigned **RECOMMENDS** that the Court **DENY** Plaintiff's request for preliminary injunction and emergency motions to be placed in protective custody or transferred.

## IV.    Conclusions

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's various requests for preliminary injunction (Docs. 8,11,16,31, and 38).

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals**.** *See, e.g., Snyder v. Nolen***, 380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **December 27, 2013**.

**IT IS SO ORDERED**.
DATED: December 10, 2013.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge